No. 2,324.

CHARLES E. SEXEY, RESPONDENT, v. L. D. ADKISON, APPELLANT.

ATTACHMENT.—EXCESSIVE LEVY.—In an action against a Sheriff for the recovery of personal property alleged to have been improperly attached, or for its value, where the complaint contains no allegation that the levy was excessive, the plaintiff cannot avail himself of the fact that the evidence showed that the levy was excessive, so as to entitle him to a recovery as to the excess.

IDEM.—Where there was great uncertainty at the time of the levy as to the value of the property attached, and it is subsequently ascertained that its value was greatly in excess of the demand sued for, it does not follow that the levy was therefore excessive.

IDEM.—SATISFACTION OF LIEN.—SURPLUS.—When the lien of an attachment is satisfied, the property not disposed of in satisfaction of the lien, as well as the surplus moneys that may remain after the Sheriff's sale and satisfaction of the debt, remain subject to the rights of the judgment debtor or his assignee.

VERDICT.—STIPULATION AS TO FORM OF.—Where the form of the verdict agreed upon in open Court by the respective counsel was a general verdict as to the whole property, after the jury has found such a verdict for the defendant, it is too late for the plaintiff to insist upon a verdict in a different form, or to assert a right to a portion of the property upon principles not applicable alike to all the property.

ESTOPPEL.—Where a transfer of property is made under the advice of a third party, neither the party who advised the transfer, nor his assignee with notice, is estopped to deny the validity and sufficiency of the transfer under the Statute of Frauds.

APPEAL from the District Court of the Tenth District, Yuba County.

This action is against the late Sheriff of Yuba County to recover the possession of property taken by him from the possession of plaintiff under a writ of attachment issued in an action in the District Court of said county, in which S. C. Hutchings was plaintiff, and H. C. Crane & Co., defendants.

The action was commenced April 25, 1866. At the trial a verdict and judgment were rendered for defendant. Plaintiff moved for a new trial which was denied, and he appealed. On appeal the order of the District Court was reversed, and a new trial ordered, which was had in 1868, and a general verdict and judgment were again rendered for defendant. Plaintiff moved for a new trial, which was granted, and defendant appeals from the order granting the new trial.

The facts, as shown by the record, are, that on the 14th of April, 1866, Crane & Co. were indebted to the plaintiff Sexey, in a sum exceeding $4,000; that on that day he commenced an action against them for the sum due, and caused an attachment to be issued and placed in the hands of the Sheriff for service, to secure his debt. Crane was then, and for some time previous had been working certain mining claims in Yuba County, which he held under lease from Robert McQueen. McQueen owned the claims, but Crane was working them for his own account, and had at that time a considerable quantity of amalgam in the flumes, and of drifted dirt ready for washing, in the claims. On the evening of the 14th of April, plaintiff went with the Sheriff to the claims, prepared to make an attachment. He told Crane his business—that he came to attach. Crane, not liking to take the responsibility of acting in the matter upon himself, invited the plaintiff and Sheriff to go with him to

McQueen's house. They went there, and the condition of affairs being stated, McQueen advised Crane to turn over the property in suit and the claims to the plaintiff, which was accordingly done, and plaintiff took formal possession, employed one Bradley as his foreman, and others as laborers, among whom was Crane, and proceeded with work on the claims until the 23d of the month, when the defendant took the property from him under an attachment issued in the suit of *Hutchings* v. *Crane & Co.*

At the time Sexey took possession of the claims, on the 14th of April, 1866, Crane & Co. were indebted to Hutchings in the sum of $739.39; to McQueen, $855.57; to the Union Lumber Company, $59.27; and to Wm. Keim, $49; making in all, $1,703.53. Hutchings was the son-in-law and business agent of McQueen, keeping his books and directing a portion of his business. On the 21st of April, seven days after Sexey took possession of the property, Hutchings got an assignment of the claims of McQueen, the Union Lumber Company, and Wm. Keim, to himself, and on the 23d commenced an attachment suit against Crane & Co. for $1,703.53—the amount of those claims and his own; and the Sheriff, under his direction, took the property in suit from the possession of plaintiff under the attachment.

The other facts are stated in the opinion.

*J. G. Eastman* and *J. O. Goodwin*, for Appellant.

Plaintiff brought this action, claiming to be the owner of all the property described in his complaint, and not such part only as might remain after Hutchings' claim should be satisfied. To this allegation the defendant did not answer that he was the owner of the property, but that under and by virtue of a writ of attachment, properly issued in the case of *Hutchings* v. *Crane & Co.*, he, the defendant, as Sheriff of Yuba County, and as authorized and directed by Section 25 of the Practice Act, had attached and was safely keeping such property, not as his own, but as *security* for the satisfaction of any judgment that Hutchings might recover in his said action against Crane & Co., and we are

unable to see that anything was to be tried or determined except as to whether the defendant should or should not hold the said property under the attachment in the case of *Hutchings* v. *Crane & Co.*, to secure the payment of any judgment that Hutchings might obtain against said Crane & Co., and in our judgment the verdict of the jury and judgment by the Court thereon simply and only determined that the defendant, as such Sheriff, had a right to hold the property under attachment for the security of any judgment that Hutchings might obtain. Plaintiff avers that all the property was his—tendering that single issue and none other. Defendant denied that his title was good as against Hutchings, a creditor of Crane & Co., and that he had good right to hold said property, under said attachment, as security for the payment of Hutchings, in case he recovered a judgment against Crane & Co. And with this single question before the Court and jury, as to whether the attachment should be allowed to fulfill its purpose by holding the property attached for the security of any judgment that Hutchings might recover, and nothing further, to now say precludes, or prevents, or estops Sexey from recovering any surplus that may remain out of the property attached after the payment of Hutchings' judgment, is an assertion never before claimed as law, and as far as our research extends, not sustained by any single adjudicated case.

But the District Judge grants the new trial upon the sole grounds " that Sexey can only recover such balance or surplus in this action."

But we say, why not? When Hutchings gets his judgment and execution thereon, and the Sheriff makes the money out of the property attached and pays the plaintiff, Hutchings, or his attorney, so much as will satisfy the judgment and Sheriff's costs, the balance, if no attachment or garnishment intervenes, will by law go to the judgment debtors, Crane & Co., and if Crane & Co. owe Sexey, what is to hinder Sexey from maintaining a suit against said company, and either by attachment or execution take and secure any balance in the hands of defendant after the

judgment of Hutchings is satisfied ? It certainly cannot be said that this suit has determined in any sense that the bogus attempt of Crane & Co., to put the property in litigation into the possession or name of Sexey, was or is void as between said Sexey and Crane & Co., but only that Hutchings might hold it under attachment to satisfy his claim' first. And upon the whole facts appearing upon the trial, we have no doubt but the Court would, upon application made by Sexey, order the defendant to pay any surplus remaining after the satisfaction of Hutchings' claim, directly to Sexey, without resort to a suit, even, for that purpose; making his rights clear and undoubted, either upon motion or by suit.

We claim that the only issue to the jury in this case was whether the transaction between Crane & Co. and Sexey was fraudulent as to Hutchings, and whether the property in question was liable to be taken and held under process in Hutchings' case, and not how much of it was so liable.

But whatever might have been the right of the plaintiff in regard to this particular question, we submit that it was waived on the trial.

An agreement was made that the case should be submitted upon the one main issue, and that the jury should only determine as to whether the sale from Crane & Co. to Sexey passed such a title as was valid against Hutchings as a creditor. All other issues by this agreement were waived and withdrawn; and while we claim there was none other in the case, yet if there had been, it was competent for them to stipulate to submit it upon that one, and they will not be permitted to go behind their stipulation.

But in any event, the error (if such it was), assigned by the Judge in his order granting a new trial, was not such a one as to entitle the plaintiff to such an order unconditionally; at most, it was a mere mistake as to the amount of judgment, for it will not be claimed that the property was susceptible of segregation, and the rule is well settled that where a judgment is for too large an amount, that a new trial will only be granted upon the failure of the party re-

covering to remit the excess, and if there was such an error in this case, it called for a modification and not a peremptory reversal of the judgment. If the judgment was too large, the defendant should have had an opportunity to remit the excess.

*W. C. Belcher* and *G. N. Swezy,* for Respondent.

At the time McQueen joined with Crane in making the transfer to Sexey, and in inducing him to accept the transfer instead of securing his debt by attachment, the debt of $855.87, was fully due from Crane & Co. to McQueen. As between Sexey on the one side, and Crane and McQueen on the other, the transfer was altogether good, even though it had been void under the statute as against subsequent purchasers in good faith and other creditors. It was McQueen's privilege to hold his own claim in abeyance till Sexey's was paid, and by making himself a party to the transfer, he agreed to do so.

If McQueen had simply stood by during the negotiations between Crane and Sexey, taking no part in them, but listening only, and knowing that Sexey was about to abandon his purpose and his right to attach, and so secure his debt, and to take the property as he did take it, and had withheld all information in regard to his own claim, with the purpose to induce Sexey to abandon his attachment and take the property and expend money in working it, and then to take it from him under attachment for his own debt, he would have been estopped from attacking the transfer. The law says that a man who knowingly, by act or word, or by his silence even, suffers or induces another to expend his money in the purchase of lands or goods from one who is apparently the owner, shall not afterwards be heard to assert against the title thus acquired, that he was the owner at the time. (See 2 Smith's Leading cases, 511, for the rule as stated by Lord Denman in *Packard* v. *Sears,* 6 A. and E. 475; *Bowman* v. *Cudworth,* 31 Cal. 148.)

If McQueen was estopped from attacking the transfer, Hutchings was so too, as to this debt, for not only the party

doing or neglecting to do the act creating the estoppel, but privies are bound by the estoppel, excepting only, as in *Snodgrass* A. *Ricketts* (13 Cal. 359), purchasers for a valuable consideration and without notice. So it was determined in the Duchess of Kingston's case, and has ever since been held.

Besides, the rule is, that the assignee *for value* of a negotiable instrument, which is negotiated after maturity, takes it subject to all equities existing against it at the time, while the assignee of a non-negotiable *chose in action* or debt takes it subject to such equities, without regard to the time when it becomes due. This is the rule at common law, and our statute has affirmed it in the broadest terms. (Practice Act, Sec. 5.)

McQueen could not be heard to contest the title of Sexey; and Hutchings, the assignee of the account, stands in his shoes and holds the debt subject to the same defences as McQueen would have held it.

There can be no doubt that the attachment was fraudulent and invalid as to this debt of $855.87; and if fraudulent and invalid as to a parcel of the amount for which the attachment was issued and levied, was it not for that reason, if for no other, invalid as to the whole amount? Does not the fraud as to this parcel, taint the whole demand? In the case of *Taaffe* v. *Josephion* (7 Cal. 352), it was held that where a plaintiff sued out an attachment for more than was due him, his attachment was void as to the whole. This was overruled by the subsequent cases of *Patrick* v. *Montedor* (13 Cal. 434), and *Gamble* v. *Vall* (15 Id. 510), only so far as to say that the mere fact that the attachment is for a greater sum than is due, is not *conclusive* evidence of such fraud as will render the whole attachment void, as the error may have occurred innocently through pardonable mistake or accident, but it follows from the decisions in those cases, that the plaintiff had designedly sued out his attachment for a considerable sum more than he had a right to sue and attach for, the whole would be void, and particularly, it seems to us, on general principles of equity and fair deal-

ing this result would follow when there is an evident attempt on the part of the attaching creditor to hinder, delay and defraud other creditors out of their just demands. (*Fairfield* v. *Baldwin*, 12 Pick. 397.)

The verdict was general for defendant. If the transfer to Sexey was void under the statute as against creditors, and if Hutchings was a creditor within the meaning of the statute for the full amount he sued for, $1,703.53, it was only void as against creditors, and to the extent of their demands.

The interest of the officer in the property attached or seized under execution, is a qualified interest, and only to the extent of the demand specified in his writ, and costs. (*Fitzhugh* v. *Wiman*, 5 Selden, 559; *Seaman* v. *Luce*, 23 Barb. 248.)

What would be the effect of this verdict and judgment if allowed to stand? Suppose that Hutchings, in his own good time, should prosecute his suit and recover judgment therein for $1,703.53, who then would be entitled to the balance of the money? So far as Sexey would be concerned, his rights to the property would be effectually concluded by the judgment. No matter how much balance of money or property might remain in the defendant's hands, he would be precluded from enforcing a return of it to him. This is the view of this question taken by the District Judge, and is the ground upon which his order, granting plaintiff's motion, is based.

Appellants in reply:

Contended that the case cited from 2 Smith's Leading Cases, 511, and the rule there stated, as well as that claimed by counsel for respondent, if good law, is not applicable to the facts in the case. Sexey was not decided as to the owner. Crane was the owner, and had a perfect right to make the transfer he attempted to make. We do not dispute that, or that the title at the time was in him. The trouble is not that Crane did not own and was not competent to convey, but that Sexey took no proper steps to acquire what Crane did own and have the right to

convey. If we should stand by and see a person buy a piece of land of a third party of which we were the owners, and did not assert our title at the time, we would be estopped; but if were not the owners, and had no interest therein, but were creditors of the vendor, and the vendee failed to take such steps as were necessary to acquire the vendor's title, we certainly would have the right to levy upon the property, while the title did remain in the vendor, our debtor. (*Bowman* v. *Cudworth*, 31 Cal. 148.)

But in any event, we claim that this question is entirely disposed of by the consent of the plaintiff that the verdict should be general. It was agreed between the parties in open Court that if the verdict was for the defendant at all it should be general. This, we claim, was a waiver of any claim of deduction of the amount of McQueen's assignment to Hutchings, for under the pleadings a general verdict for defendant carried the whole property levied upon. In order to have passed upon the question of estoppel, a special verdict would have been necessary; and by their agreement that there should be no special verdict, they waived any privilege which would have necessitated such a verdict.

Rhodes, C. J., delivered the opinion of the Court:

After the return of this cause to the Court below, the jury again rendered a verdict for the defendant; and the Court, upon the plaintiff's motion, granted a new trial. It appears from the opinion, that the order for the new trial was granted mainly on the ground that the property attached by the defendant, was more than sufficient to satisfy the demand of Hutchings; that when enough is taken to satisfy that demand, the balance must be returned to the plaintiff— the vendee of the attachment debtor; that "that balance can only be recovered in this action," and that "if a general judgment in favor of the defendant is allowed to stand, the plaintiff can never get it "—the balance.

The transfer of the property from Crane to the plaintiff, was made on the 14th day of April, 1866; it was seized by the defendant, as the Sheriff, on the 23d of the same

month; and two days thereafter, this action was commenced. The complaint is in the usual form in actions for the recovery of the possession of personal property, or its value in case a delivery of the property cannot be had. The defendant justifies under the attachment in the case of *Hutchings* v. *Crane*. There is no allegation in the complaint that the levy was excessive; and if the evidence showed that such was the fact, we cannot see how the plaintiff could avail himself of that fact in this action. It was the duty of the defendant to seize sufficient property to satisfy the amount specified in the writ—that is to say, property which would be sufficient, in his judgment, when sold at public auction. The property, when attached, consisted, as did the property when sued for, of a quantity of drifted gold-bearing earth in a certain mining claim, a quantity of quicksilver, gold dust and gold amalgam in the flume leading from the mining claim, and the blocks and strips in the flume. From the situation of the property, there must have been great uncertainity as to its value; and because it turned out, when the flume was cleaned up, that the value of the property was nearly double the amount of Hutching's demand, it does not follow that the levy was therefore excessive. But conceding that the levy was excessive, and that the plaintiff could recover in this action the excess, which parcel of the property was the plaintiff entitled to recover at the commencement of the action ? what property did the defendant then wrongfully detain ? The jury were unable to make the designation, and determine that upon one part of the property the attachment did, and upon the residue it did not, constitute a valid lien.

We are of the opinion that the Court was also in error, as to the effect of the judgment for the defendant, upon the property which might remain after the satisfaction of Hutchings' demand. The judgment determines that the lien of the attachment has priority over the title of the plaintiff, acquired by contract with Crane. No one denies the validity of the plaintiff's title as against Crane; and when the lien of the attachment is satisfied, the property

not disposed of in satisfaction of the lien, as well as the surplus moneys that may remain after the Sheriff's sale, and the satisfaction of Hutchings' debt, remain subject to the contract between the plaintiff and Crane.

There is a further answer to the grounds on which the new trial was granted. The Court requested counsel to prepare for the jury blank forms of the verdict; and the plaintiff's counsel prepared, and the defendant's counsel assented to, two forms; one of which was: "We, the jury, find for the plaintiff, and that the value of the property was $—;" and the other: "We, the jury, find for the defendant." And it was agreed in open Court that the verdict should be in accordance with one of those forms. The stipulation, and the assent to those forms for the verdict, make it manifest, that the respective parties desired and expected a general verdict for the whole property in controversy; and negatives the idea that either party then claimed that his right to any parcel of the property was of a different character, or rested upon any different basis, from that asserted to all the property. After an adverse verdict, rendered under those circumstances, it is too late for the plaintiff to insist on a verdict in another form, or to assert a right to a portion of the property, upon principles not applicable alike to all the property.

Many other grounds are taken in the motion for a new trial, but none of them requires any particular notice except that in relation to the assignment to Hutchings, of the indebtedness of H. C. Crane & Co. to McQueen. It is insisted that McQueen, as he advised the transfer of the property by Crane to the plaintiff, is estopped to deny that the transfer was valid and sufficient under the statute of frauds; and that Hutchings is also estopped, because he took the assignment of the indebtedness, with notice that the property had been transferred to the plaintiff, by the advice of McQueen. There are no grounds for saying, that McQueen was estopped by means of the advice alone; but if estopped, it is because his advice was accepted and acted upon. When he advised a transfer of the property to

satisfy or secure the debt of the plaintiff, he meant a trans-
fer that would be valid and effectual in law. The vital
point in the controversy, related to the validity of the trans-
fer, under the fifteenth section of the Statute of Frauds, and
the jury found against the plaintiff. McQueen, therefore,
was not estopped, even conceding that he would have been,
had his advice been followed.

Order granting a new trial reversed.